STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:   (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Sophia_Whiting@fd.org

Counsel for Defendant Martinez

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | **Case No.:** CR 19–716 JD |
|---|---|
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | |
| JUAN MARTINEZ, | |
| Defendant. | |

**INTRODUCTION**

Juan Martinez sold $20 worth of heroin to an undercover police officer on the street. At the time of sentencing, Mr. Martinez will have served more than three and a half months in custody. After he completes his sentence, he faces inevitable immigration detention and deportation. He respectfully requests that the Court vary downward under the factors of 18 U.S.C. section 3553 from the sentencing guidelines range of ten to sixteen months and impose a sentence of time served (effectively three months and twenty days). Mr. Martinez waives his presence at sentencing pursuant to Rule 43(c)(1)(B) of the Federal Rules of Criminal Procedure in consideration of a time served sentence.

DEFENDANT'S SENTENCING MEMORANDUM
*MARTINEZ*, CR 19–716 EMC

1

**DEFENDANT'S WAIVER OF APPEARANCE**

To ensure Mr. Martinez's health and safety under current health conditions recognized the Court's General Order 72,[1] Mr. Martinez consents to telephonic sentencing. It may be difficult or impossible to secure Mr. Martinez's participation by telephone or videoconference from the jail. However, if a sentence of time served is warranted, a delay in Mr. Martinez's sentencing hearing would cause him to be held for longer than necessary at Santa Rita Jail. Therefore, after having been informed of his rights, Mr. Martinez is willing to waive his rights of appearance and allocution pursuant to Rule 43(c)(1)(B) of the Federal Rules of Criminal Procedure. The legality of such a waiver has been acknowledged by multiple District Court Judges. *See, e.g., United States v. Danillo Bustillo-Sevilla*, Order Re Sentencing Hearing, Dkt. 11.

**BACKGROUND**

Juan Martinez was born at home on June 24, 1994, on a mountainside in a small village outside of Tegucigalpa, Honduras. He grew up in extreme poverty. Mr. Martinez began working in the fields at just 12 years old, cultivating maize, coffee, and beans. His father abandoned his family when Mr. Martinez was a young teenager. Mr. Martinez therefore became financially responsible for his mother and eight siblings. Still, unlike many of his peers, Mr. Martinez managed to attend school through high school because of his grit and determination. He would go to school in the morning, followed by work for the rest of the day. Some days, he would have to miss school for work, but he would study

---

[1] As of the date of this motion, the President has declared a national public health emergency, and the Governor of the State of California has declared a public health emergency throughout the state, both in response to the spread of the Coronavirus Disease 2019 (COVID-19). *See Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (Mar. 13, 2020); *Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of COVID-19*, https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/ (Mar. 4, 2020).The Centers of Disease Control and Prevention (CDC) and other health authorities have advised people to take precautions to reduce the exposure to COVID-19 and to slow the spread of the disease. An important part of the CDC recommendations is social distancing: keeping an appropriate physical distance between people, and particularly in public settings. *See generally* Centers for Disease Control and Prevention, *Coronavirus (COVID-19)*, https://www.cdc.gov/coronavirus/2019-ncov/index.html (updated frequently); California Dep't of Public Health, https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx (updated daily); *see also* Office of Governor, Executive Order N-25-20 (Mar. 12, 2020).

DEFENDANT'S SENTENCING MEMORANDUM
*MARTINEZ*, CR 19–716 EMC

1   late nights and weekends to catch up. Despite his efforts, Mr. Martinez was not able to get a job

2   outside of meager paying farm labor. He could not afford to continue on to trade school because his

3   mother's medical bills were adding up. She suffers from diabetes and, despite working tirelessly in

4   the home, she needed Mr. Martinez's income for the family to survive. Still a teenager, he made the

5   difficult decision to travel north alone in search of employment. It took him one month by train, and a

6   treacherous journey across the border, to arrive in California.

7          Once Mr. Martinez arrived in the United States, he was always in search of a legitimate job. He

8   managed to get temporary employment despite his lack of legal immigration status. When he first

9   arrived, he worked at QuantumClean, a semiconductor cleaning company in Fremont, California.

10  Most recently, in 2019, he worked as a janitor for UCT in Hayward, California. When he did not

11  have reliable employment, he would wait outside of Home Depot or Walmart to offer his services as

12  a day laborer. He never stopped sending money to his family, both for his mother's medical expenses

13  and to fund his brothers' education. Unfortunately, when his funds got desperately low, he also made

14  the terrible decision to be involved in drugs.

15         On December 4, 2019, Mr. Martinez sold $20 worth of cocaine base to an undercover San

16  Francisco police officer. Since December 20, 2019, Mr. Martinez has been imprisoned at Santa Rita

17  Jail. In jail, Mr. Martinez feels incredibly guilty that he put himself in this position and is worried

18  about the impact on his family. His diabetic mother has not been able to afford her medication. In jail,

19  he cannot send his family any money and can only occasionally afford to call them. He is especially

20  worried now in light of the COVID-19 pandemic, both because of his potential exposure to the virus

21  at Santa Rita Jail, himself being in a quarantined unit, but more importantly for his mother, who is at

22  high risk for severe infection. Mr. Martinez's priority is to get back home to care for his family.

### DISCUSSION

24         Mr. Martinez agrees with the government and U.S. Probation that the applicable U.S.

25  Sentencing Guideline range is ten to sixteen months, based upon Offense Level 10 and Criminal

26  History Category III.

27         Although the Court must remain mindful of the Sentencing Guidelines recommendation, the

28  advisory Guideline range is not presumptively reasonable and it cannot be given any more or less

1   weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th

2   Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern

3   must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of

4   the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence;

5   to protect the public; and to provide the defendant with needed educational or vocational training,

6   medical care, or other correctional treatment." *Carty*, 520 F.3d at 991.

7        Under the applicable section 3553(a) factors, Mr. Martinez respectfully requests that the Court

8   vary downward from the low end of the advisory range to a sentence of "time served," more than

9   three and a half months of incarceration, for the reasons stated below.

10  **I.    The Nature and Circumstances of the Offense and the Characteristics of Mr. Martinez's Life Warrant A Sentence of Credit for Time Served (18 U.S.C. § 3553(a)(1))**

11

12       As detailed above, the circumstances surrounding the offense and the characteristics of Mr.

13  Martinez's life counsel a downward variance from the advisory range. He relates these circumstances

    not to minimize his conduct, but to provide context for it.

14

15       Mr. Martinez did not receive the childhood every child deserves. He started working to help

16  support his family at age 12 and has been doing so ever since. He spent the majority of his life

    seeking out and securing legitimate employment. Unfortunately, with his poverty, youth, and lack of

17  legal immigration status, his options have been limited and unstable. Despite these circumstances, he

18  continued to send hundreds of dollars to his family each month. Vulnerable and desperate, Mr.

19  Martinez turned to selling small amounts of drugs to try to continue to support his family. He knows

20  this was a mistake. He is eager to get back to Honduras to find work to support his family again,

21  especially given his mother's significant health complications.

22

23  **II.    The Offense is Relatively Less Serious and a Sentence of Time Served is Just Punishment (18 U.S.C. § 3553(a)(2)(A))**

24       While Mr. Martinez takes responsibility for his criminal conduct in the instant offense and

25  recognizes that selling any amount of drugs negatively impacts public health, the scope of his offense

26  should be viewed in relation to other federal cases. The fact is that a hand-to-hand drug sale on the

27  street with no aggravating factors is a minor offense compared to the vast majority of federal

28  prosecutions, including drug prosecutions. For the most part, street-level drug offenses generally

would not be prosecuted in federal court; to the contrary, federal drug cases normally present more serious facts, such as substantially larger quantities of controlled substances, possession and/or use of firearms or other weapons, or an organized drug trafficking operation. In comparison, the offense in Mr. Martinez's case is relatively minor, and time served is appropriate accordingly.

### III. A Sentence of Time Served Affords Adequate Deterrence and Mr. Martinez Inevitable Deportation Minimizes Public Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))

The inevitability of Mr. Martinez's deportation makes the deterrent effect of three and a half months incarceration that much stronger in this case. His detention and removal from the United States following his release from federal imprisonment minimizes any potential concerns for public safety—which are already slight given Mr. Martinez's minimal criminal history.

Deportation is not a formal component of punishment in a federal criminal case, but "as a matter of federal law, deportation is an integral part—indeed sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). Deportation here also serves to reinforce the deterrent value of a sentence of time served. Unlike a similarly situated citizen defendant, Mr. Martinez will not return to the local community following completion of his sentence. He will be quite literally removed from the community. Selling drugs on the street in the Tenderloin was always a terrible mistake on his part, but the inevitability of deportation makes that fact especially clear to Mr. Martinez.

Mr. Martinez has never had a federal criminal case, and his most recent state conviction is five years old. He understands the serious consequences if he were to try to come back to the United States. In addition to prosecution for illegal re-entry, he understands he would also face imprisonment for violating the terms of his federal supervised release.

Mr. Martinez deeply feels the effect his incarceration has had on his family, feeling helpless to provide for them while he is in jail. He will not risk putting them in this position again. Once he is back in Honduras, Mr. Martinez will be reunited with his family, with whom he will remain.

### IV. A Sentence Other Than Time Served Creates Unwarranted Disparities (18 U.S.C. § 3553(a)(6))

The imposition of a sentence greater than three months would create unwarranted sentencing

1  disparities in two ways. First, it would impose a sentence greater than those received by defendants in

2  recent analogous cases in the Northern District of California. Second, it would amount to differential

3  treatment compared to similarly situated citizen defendants given that Mr. Martinez is ineligible for

4  sentencing alternatives because of his immigration status.

5        This case arose from the federal government's recent Federal Initiative for the Tenderloin

6  ("FITT"). Defendants in strikingly similar cases arising from FITT have received sentences of time

7  served. The following cases are instructive:

8        • *United States v. Brayan Arteaga*, CR 19-426 WHO. Mr. Arteaga was arrested for

9              selling $16 of crack cocaine to an undercover officer. He had recently been convicted of

10             an offense involving drug sales in San Francisco. Judge Orrick sentenced Mr. Arteaga

11             to credit for time served (effectively one month).

12       • *United States v. Pedro Anibal Anariba Muncia*, CR 19-428 CRB. Mr. Muncia was

13             arrested for a $20 heroin sale. Arresting officers found $996, 37.3 grams (gross) heroin,

14             35.3 grams (gross) cocaine base, and 33.1 grams (gross) crystal methamphetamine on

15             Mr. Muncia. He previously received a federal sentence of 180 days jail for distributing

16             controlled substances, after which he was deported. Following the government and

17             defendant's recommendation, Judge Breyer sentenced Mr. Muncia to time served

18             (effectively four months).

19       • *United States v. Jesus Flores,* CR 19-429 SI. Mr. Flores was arrested for a $15 drug

20             sale. Arresting officers found $932 cash and multiple drugs on him, including 56 grams

21             (gross) cocaine base, 38.2 grams (gross) heroin, 32.5 grams (gross) methamphetamine,

22             and 31.1 grams (gross) marijuana. He has two prior deportations. Judge Illston

23             sentenced him to credit for time served (effectively four months).

24       • *United States v. Wilfredo Cabrerra*, CR 19-452 WHO. Mr. Cabrerra was convicted of

25             selling $17 worth of heroin. He has three prior drug sale convictions, including a four-

26             year prison sentence, as well as six prior deportations. Judge Orrick sentenced Mr.

27             Cabrerra to credit for time served (effectively four months).

28       As in those cases, Mr. Martinez here engaged in low-level drug sales in the Tenderloin. The

DEFENDANT'S SENTENCING MEMORANDUM
*MARTINEZ*, CR 19–716 EMC

government believed that a time-served sentence (effectively four months) was appropriate in Mr.

Muncia's case, which involved a prior federal drug conviction, prior deportation, and a greater

quantity of controlled substances. *See* CR 19-428 CRB, Dkt. No. 15 at 1. Yet inexplicably, the same

government now recommends a sentence more than twice as severe for Mr. Martinez. To avoid

unwarranted sentencing disparities among similarly situated defendants, the Court should sentence

Mr. Martinez to time served.

Furthermore, since Mr. Martinez is not a citizen, he is not eligible for preferable alternatives to

a full term of incarceration, like community confinement or home detention. *See* U.S.S.G. §

5C1.1(d)(2). He cannot benefit from the drug rehabilitation programming or Alternatives To

Incarceration Program (ATIP) available to eligible citizen defendants. Compounding this disparity is

the likelihood that Mr. Martinez will face immigration detention upon completion of his criminal

sentence. Unlike similarly situated U.S. citizen defendants, at the end of his custodial sentence, Mr.

Martinez will be detained by Immigration and Customs Enforcement for an unknown amount of time

and then deported to Honduras. Mr. Martinez should not be disproportionately punished because of

his ineligibility for alternatives to incarceration based on where he was born.

## V. A Sentence of Time Served Is Cost-Effective, Considering Mr. Martinez's Inevitable Deportation

Given Mr. Martinez's inevitable deportation, a downward variance to time served will save

taxpayers' dollars without threatening public safety, *see supra* Section IV. *See United States v.*

*Loaiza-Sanchez*, 622 F.3d 939, 942 (8th Cir. 2010) (Bright, J., dissenting) ("[L]ong sentences for

illegal aliens punish not only the defendant but the American taxpayer. 'It would be more sensible to

give . . . a stiff, but shorter sentence and then to promptly deport him . . ..'" (quoting *United States v.*

*Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring))); *United States v. Maldonado*,

242 F.3d 1, 2 (1st Cir. 2001) (referencing a statement by the district court that "the real reason I'm

going to depart downward here is because I don't want the taxpayers to pay for him unnecessarily").

Cost-effectiveness during the federal government's current FITT campaign is especially important, in

light of the accompanying increased rates of defendants and detention.

1

**CONCLUSION**

2          For the aforementioned reasons, the Court should sentence Mr. Martinez to a term of

3     imprisonment of "time served," effectively three and a half months of imprisonment.

4

5

6          Dated:     April 1, 2020                          Respectfully submitted,

7                                                            STEVEN G. KALAR
                                                             Federal Public Defender
8                                                            Northern District of California

9                                                                       /S

10                                                           SOPHIA WHITING
                                                             Assistant Federal Public Defender

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SENTENCING MEMORANDUM
*MARTINEZ*, CR 19–716 EMC